Macgowan *v.* Whiting.

---

ROBERT W. MACGOWAN, *et al.*, Respondents, *against* ROBERT M. WHITING, *et al.*, Appellants.

(Decided March 1st, 1880.)

The plaintiffs were employed by the defendants to print a large quantity of electoral ballots, from copy and on paper to be supplied by the defendants, a proof to be submitted to them by the plaintiffs. The proof submitted was carefully read and compared by the defendants, and was found correct. The plaintiffs made stereotype plates from the type from which the proof had been taken, and printed the ballots from the plates. Through a defect in one of the plates, a part of the ballots, one twenty-fourth of the whole number, was so imperfectly printed as to be useless. This was not discovered until the Saturday preceding the Tuesday on which the election was held, at which time the defendants had folded and bunched, ready for use, nearly the whole of the ballots, mixing the defective ones with the others. They at once informed the plaintiffs, and, there not being time to reprint the entire quantity of ballots, and the plaintiffs offering only to reprint the number that were defective, the defendants notified the plaintiffs that they would examine all the ballots and take out those found defective, and hold the plaintiffs responsible for any damage. *Held*, that as the defendants appeared to have done the best they could under the circumstances, they were entitled to recoup or set-off the expenses incurred by them in unfolding, separating and re-folding the ballots, against the plaintiff's claim for printing. The defendants were not bound, after the examination of the proof submitted, to examine also the whole of the ballots delivered to them, to ascertain whether they had been correctly printed; and it being a matter of emergency with the defendants to have the ballots ready for use on the day of election, the ordinary rule requiring the return of articles found defective did not apply.

APPEAL from a judgment of this court entered on the report of a referee.

The facts are stated in the opinion. Upon trial before a referee, he reported in favor of the plaintiffs ; and judgment for plaintiffs was entered on the report. From the judgment the defendants appealed.

*John H. Knaebel*, for appellant.

*Francis C. Bowman*, for respondent.

CHARLES P. DALY, Chief Justice.—This is a case to be determined upon the particular state of facts disclosed in it, and to which many of the settled rules that control in contracts of sale, or for work and labor, do not apply.

The defendants employed the plaintiffs to print 600,000 election ballots, for the use of the republican party, in an election that was near at hand, the agreement being that the plaintiffs were to print the names upon the ballots, according to a copy to be furnished by the defendants ; that the paper was to be supplied by the defendants, and the plaintiffs were to submit to the defendants a proof. The copy was furnished by the defendants, and the plaintiffs sent to them the proof, in the form of a printed ballot. One of the defendants went with the proof to the plaintiffs, saw one of them, and they, together, compared it, as I understand from the evidence, with the copy, and it was found to be correct. It was read over by them together, every name was spelled, and it was found to be correct. After the exercise of this amount of care, on the part of the defendants, in the examination of the proof with the plaintiffs, they had the right to assume that the ballots they received were correct ; that they had been printed from the type, the proof impression of which they had carefully examined, and found to be, in all respects, correct ; and, in my opinion, the duty was not imposed upon them, after this preliminary investigation, of examining the whole of these 630,000 ballots, when they received them, to ascertain whether they had been correctly printed.

The ballots were not printed from the type from which the proof was taken; but from 24 stereotype plates made from the type, each plate containing 24 ballots. One of the plates, however, was defective, one of the names, " Timothy C. Cronan," being printed " Timothy C. Cron ;" there being a blur on the stereotype plate which produced this defect, a fact which, it appears from the evidence, was unknown to the plaintiffs when the ballots were delivered for use ; and was not discovered by the defendants until 500,000 had been folded, and bunched, as the testimony states, with rubber bands, ready for the committee. On the Saturday preceding the election, which took place on the following Tuesday, the chairman of the executive committee sent for some unfolded ballots, when he discovered the defect. The defendants supplied what they considered paper sufficient for 600,000, all of which was used by the plaintiffs, and produced 30,000 in excess; the whole of which amount, 630,000 ballots, was sent to the defendants; the ballots being cut by the plaintiff with a machine, and delivered unfolded and flat. As the witness states, the ballots were cut and bunched up in bundles of 1,000 each ; that is, a thousand ballots were, in this way, tied together, making 648 bundles.

The chairman of the executive committee called upon the plaintiffs, and showed them the defect, stating that it would cause the ballot to be rejected; while the plaintiffs claimed that it was not sufficiently damaging to cause the rejection. A person with whom he had made some contract respecting the ballots, and who was present, was asked if he would accept the whole 600,000, and he answered that he would not. The chairman then told the plaintiffs that he must have 600,000 good ballots, to which they replied that they were not responsible for more than one in every 24, and that they would furnish him with 25,000 ballots to take the place of the defective ones. He replied that that would not do, as the defective tickets were mixed among the 500,000 that had been folded, and the 25,000 would not enable him to meet the contract he had made ; that he would have to have the 500,000 opened and the defective ones taken out, and that he would hold the

Macgowan v. Whiting.

plaintiffs responsible for any damage arising out of so doing. The ballots, when received by the plaintiffs, were given to a woman, Mrs. Hopkins, on the Monday or Tuesday before the election, to have them folded by Saturday and ready in bags for the different wards, and it was about four o'clock on Saturday afternoon when she was notified, by the chairman of the executive committee, of the defects in the ballots, and he instructed her to have them opened and the defective ballots taken out. · He had experience in preparing and distributing electoral ballots, and testified that he knew of no less expensive way of proceeding, under the circumstances. Under the supervision of Mrs. Hopkins, the work of unfolding and taking out the defective ballots was commenced about five o'clock on Saturday afternoon, forty-five competent persons being employed in the work, which was completed on the following Monday, at two or three o'clock in the afternoon, the election occurring on the following day.

The testimony shows that, after the discovery of the defect, there was not time to get 600,000 additional ballots printed and folded, so as to be ready for use at the election on Tuesday ; the testimony being that it would take two or three days to print the ballots alone; and one of the intervening days was Sunday. One of the defendants, however, testified that in a case of necessity, he could have reproduced 500,000 of the ballots in less than twenty-four hours, at a cost of $50. But his previous testimony was that as they printed the 630,000 ballots, it required two and a half days to print them ; and in connection with this statement of his, that he could have printed the 500,000 in twenty-four hours, is to be borne in mind that he made no offer to print the whole over again, but only 25,000 to supply the place of those that might be defective, which, he inferred, was the amount, from the fact that one of the twenty-four plates had been found to be defective.

The amount paid by the defendants for reopening and taking out the defective ballots, was $192.45. Testimony was given by the plaintiff to show that it would not require the expenditure of so large an amount, which, however, is immaterial, as the referee found that the defendants were not en-

titled to recoup or set-off against the claim of the plaintiffs the expense incurred in unfolding, separating and refolding the ballots, in which I think he erred.

When the defect was discovered, it was too late to return the ballots and get others printed and folded, in time for use on the day of the election. It was a matter of emergency with the defendants, to have the ballots ready for the use of the voters on that day; and the ordinary rule which imposes upon a party the duty of returning an article within a reasonable time after its delivery, found to be defective, does not apply to such a state of facts. As the defendants had to have ballots on the following Tuesday, they had to do the best they could under the circumstances. In my judgment they did so; and were entitled to recoup against the plaintiffs' claim the expense to which they were put, arising from circumstances for which the plaintiffs were wholly answerable. I think this is apparent upon the simple statement of the facts, and is conformable with principles, rules and distinctions that have been recognized (*Hoe* v. *Sanborn*, 21 N. Y. 566; *Hawkins* v. *Pemberton*, 51 Id. 198; *Booth* v. *The Spuyten Duyvil Rolling Mill Co.*, 60 Id. 487; *Brown* v. *Edgington*, 2 Mann. & Gran. 279).

The judgment should be reversed.

VAN BRUNT, J., concurred.

Judgment reversed, with costs.